## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| AIRRION BLAKE-BEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15 C 10245 |
| ) | |
| HSBC BANK USA, N.A., OCWEN LOAN ) | |
| SERVICING LLC, DYKEMA GOSSETT ) | |
| PLLC, THE WIRBICKI LAW GROUP ) | |
| LLC, MICHAEL GILMAN, KAREN ) | |
| COURTHEOUX, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM

Frustrated at every step of his many state court efforts -- at both the nisi prius and appellate levels -- to undo the fact and effects of the foreclosure of his property,[1] Airrion Blake-Bey ("Blake-Bey") has initiated this pro se federal court action against HSBC Bank USA, N.A. and Ocwen Loan Servicing LLC (collectively referred to here for convenience as "the Corporate Defendants") and Dykema Gossett, PLLC, Michael Gilman and Karen Courtheoux (collectively referred to here for convenience as "the Lawyer Defendants"). Each set of defendants has noticed up for December 16 presentment a largely identical Fed. R. Civ. P. ("Rule") 12(b)(1) and 12(b)(6) motion to dismiss Blake-Bey's Complaint.[2]

---

[1] One appeal, which may be Blake-Bey's last-ditch state court effort (or may not, given his stubborn persistency), remains pending: an appeal from the Illinois Circuit Court's rejection of his defense that he was assertedly not provided a required grace period notice.

[2] "Largely identical" is really a understatement. With three days having intervened between the Corporate Defendants' filing (Dkt. No. 10) and the Lawyer Defendants' filing (Dkt. No. 14), the latter turned out to be is a verbatim repeat of the former, followed by the

(continued)

Because this Court anticipated that it would schedule Blake-Bey's response to the two motions at the presentment date, it commenced the preparation of this memorandum so that it would be available to the parties in advance of the presentment date -- not as a ruling on the motions, which will take place only after Blake-Bey has had his say, but rather to give him some sense of the legal hill that he needs to climb and also to serve as a cautionary shot across the bow. But as this memorandum was at the stage of completion, Blake-Bey served and filed a notice that at the same December 16 date he would seek leave to file an Amended Complaint, and that has made the issuance of this memorandum even more appropriate.

Since 2009 Blake-Bey has been engaged in his battle against the foreclosure of his property. That battle's long and tortuous history, which includes a state court foreclosure judgment followed by three separate appeals, need not be thoroughly recounted here -- it suffices to repeat that all of the defenses that Blake-Bey has raised in the state court proceedings have been rejected.

Blake-Bey now attempts to restyle those rejected state theories as federal theories, but that will not work to the extent that he seeks to treat this Court as an appellate tribunal to revisit and review those state court judgments. Under the Rooker-Feldman doctrine (Rooker v. Fid. Trust Co., 263 U.S. 413, 416 (1923) and Dist. of Columbia Ct. of Appeals v. Feldman, 460 U.S. 462, 486 (1983)) this Court lacks jurisdiction to revisit a judgment entered by a state court. As explained by the per curiam opinion in Lance v. Dennis, 546 U.S. 459, 460 (2006) (internal quotation marks omitted):

_____
(footnote continued)
discussion of a single issue (part III.E of the Argument section) that is applicable only to the Lawyer Defendants.

> The Rooker-Feldman doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by state-court losers challenging state-court judgments rendered before the district court proceedings commenced.

Next, Blake-Bey's Counts I and II attempt to assert violations of 42 U.S.C. §§ 1983 ("Section 1983") and 1985 ("Section 1985") on the predicate that HSBC's foreclosure was illegal (Complaint ¶¶ 12-17, 22-28). But neither the Corporate Defendants nor the Lawyer Defendants are "state actors" so as to come within the ambit of Section 1983, and a simple reading of Section 1985 reveals the difficulty that Blake-Bey must face in calling that statute into play.

As for Blake-Bey's Counts III, IV and V, which seek to advance theories of recovery under the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.), they are vague on a number of fronts, including the nature of the alleged debt and the content of the communications between the parties. But once again, to the extent those theories rely on Blake-Bey's assertion that "[d]efendants did not loan Plaintiff any monies" (Complaint ¶ 33), those theories appear to butt head-on into the facts that the foreclosure's legality has already been finally adjudicated in the state courts and that their adjudication is not appealable or vulnerable to collateral attack here.

Indeed, even if Blake-Bey were able to demonstrate that any components of his Complaint here were not previously adjudicated (a subject on which this memorandum will not of course opine until Blake-Bey has had his say), the Illinois doctrine of claim preclusion[3] means

---

[3] Although defendants' motions use the term "res judicata," this Court (adhering to the teaching in Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 77 n.1 (1984) and many later cases) has consistently referred to "claim preclusion" to distinguish the concept from "issue preclusion" (though the latter concept also may have application here). That usage avoids any potential for the frequently-encountered confusion engendered by the older practice of applying the term "res judicata" to both branches of preclusion analysis. More substantively, Migra, id. at 81 explains why Illinois' preclusion law would govern here:

(continued)

that he may not litigate issues here that he could have raised but failed to raise in the state courts (see Hayes v. City of Chicago, 670 F.3d 810, 813 (7th Cir. 2012)). That is, if the operative facts underlying Blake-Bey's present theories of recovery mirror the facts underlying his theories in state court, those present theories will be barred on the ground that they could (and hence should) have been raised previously (id.).

It should be emphasized that this memorandum does not purport to deal with all of the claimed flaws in Blake-Bey's Complaint, nor should it mistakenly be viewed as a substantive ruling on the myriad issues raised in defendants' motions. It is rather intended (1) to place Blake-Bey on notice that he cannot use this forum to get a second (or third or fourth) bite at the apple as to the legality of the underlying foreclosure, (2) to provide him with advance notice that the matters discussed here also have a bearing on his newly-announced intention to file an Amended Complaint and (3) to apprise him of the prospect that his pursuit of arguments (in either the present Complaint or any Amended Complaint) that are found to be legally frivolous may lay him open to Rule 11(c) sanctions requiring him to pay the cost of his adversaries' legal services.

_____
                                  Milton I. Shadur

Date: December 11, 2015            Senior United States District Judge

---

(footnote continued)

> It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.

Of course it was an Illinois court that rendered the foreclosure judgment at issue here.